**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RANDY RICH, as personal representative of RYAN RICH, deceased, and NICK JENSEN and TANYA JENSEN as guardians for R.J., a minor,<br><br>　　Plaintiffs,<br><br>vs.<br><br>TASER INTERNATIONAL, INC., and DOES 1 to 10, inclusive,<br><br>　　Defendants. | 2:09-cv-02450-ECR-RJJ<br><br>**Order** |

　　This case arises out of allegations that an Electronic Control Device produced by Defendant TASER International, Inc. ("TASER") caused the death of Dr. Ryan Rich.  Now pending before the Court is Defendant TASER's Motion for Summary Judgment (#53) as to the standing of Plaintiff R.J., a minor.  The motion is ripe and we now rule on it.

**I. Factual Background**

　　On January 4, 2008, decedent Dr. Ryan Rich ("Dr. Rich"), who had a history of seizure disorders, was driving on Interstate-15 in Las Vegas, Nevada when he had a seizure which resulted in several minor traffic collisions, witnessed by Nevada Highway Patrol Officer Loren Lazoff ("Officer Lazoff").  (Compl. ¶¶ 11-13.)  After the accident,

Officer Lazoff approached the vehicle and a struggle ensued, as Dr. Lazoff was in a dazed post-seizure state.  (Id. ¶¶ 13-15.)  When Dr. Rich eluded Officer Lazoff's grasp and began heading toward oncoming traffic, Officer Lazoff found it necessary to discharge his TASER Model X26 Electronic Control Device (the "ECD") three times into Dr. Rich's chest from a distance of about three to four feet, and then two additional times to Dr. Rich's right thigh before he was able to handcuff Dr. Rich with the help of a passerby.  (Id. ¶¶ 16-18.)  When Officer Lazoff returned to his patrol vehicle to call an ambulance, the passerby informed him the Dr. Rich was turning blue.  (Id. ¶ 20.) Paramedics transported Dr. Rich to Spring Valley Hospital where he was pronounced dead.  (Id. ¶ 21.)

At the time of his death, Dr. Rich was a divorced father to Plaintiff R.J., a minor. (Pls.' Mem. P. & A. at 2 (#120); Def.'s Mem. P.& A. at 2 (#121).)  Approximately seven months after Dr. Rich's death, and prior Plaintiffs bringing suit, Plaintiff R.J. was adopted by her mother's new husband, her custodial step-father. (Pls.' Mem. P. & A. at 2 (#120); Def.'s Mem. P.& A. at 2 (#121).)

## II. Procedural Background

Plaintiffs filed the Complaint (#1) on December 30, 2009, alleging the following five causes of action: (1) Negligence; (2) Strict Product Liability; (3) Intentional Misrepresentation; (4) Fraudulent Concealment and Deceit; and (5) Negligent Misrepresentation.  TASER filed its answer (#13) on April 26, 2010.

2

On March 30, 2012, we issued an Order (#119) granting TASER's Motions in Limine (## 50, 51) to exclude the testimony of Drs. Jerome Engel and Michael Wogalter, respectively, and denying TASER's Motion in Limine (#52) to exclude the testimony of Dr. Douglas Zipes. Further, we granted TASER's Motion for Summary Judgment (#53) with regard to Plaintiffs' third, fourth, and fifth causes of action, and denied the motion as to Plaintiffs' first and second causes of action for negligence and strict product liability. We further granted TASER's Motion to Strike (#109) and struck Dr. Zipes' supplemental report (#108-1) from the record.

We further ordered the parties to brief the issue, raised in TASER's Motion for Summary Judgment (#53), whether the adoption of Plaintiff R.J., a minor, by her stepfather precludes her from bringing a wrongful death action with regard to her natural father, Dr. Rich. Plaintiffs and Defendant submitted their respective Memoranda of Points and Authorities (## 121, 122) on April 20, 2012. On May 4, 2012, Plaintiffs and Defendant filed their respective Responses (## 122, 123). There were no replies.

### III. Legal Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no

3

genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form--namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the

4

appropriate standard of proof. Anderson, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

### IV. Discussion

Defendant TASER challenges Plaintiff R.J.'s standing to pursue a wrongful death claim pursuant to Nevada law. TASER argues that Nevada Revised Statute ("NRS") § 127.160 unambiguously precludes Plaintiff R.J. from bringing a wrongful death action for the alleged wrongful death of her natural father because her right to bring suit terminated upon her subsequent adoption by her custodial stepfather.

NRS § 127.160 provides as follows:

> After a decree of adoption is entered, the natural parents of an adopted child shall be relieved of all parental responsibilities for such child, and they shall not exercise or have any rights over such adopted child or the property of such adopted child. The child shall not owe his or her natural parents or their relatives any legal duty nor shall the child inherit from his or her natural parents or kindred.

5

However, whether NRS § 127.160 cuts off a minor child's right to inherit from her deceased natural parent upon her subsequent adoption is beside the point.[1]  Rather, the proper question is whether Plaintiff R.J. may recover under Nevada's wrongful death statute as an heir of decedent.  On this point, Nevada's wrongful death statute provides in pertinent part: "When the death of any person . . . is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death, . . . ."  NEV. REV. STAT. § 41.085(2).  Therefore, any heir of a decedent has standing to bring a wrongful death action, and we may therefore focus on inquiry on the

---

[1] Even if this were the question before the Court, Defendants cannot identify a single case that supports their proposition that a minor child loses standing to bring a wrongful death action when his or her natural parent dies *before* his or her adoption - all of the cases relied upon my Defendants involve circumstances where the natural parent died *after* the minor child's adoption.  See, e.g., Buchea v. United States, 154 F.3d 1114, 1116 (9th Cir. 1998) (holding that minor's adoption nine months prior to biological parent's death severed her right to bring a claim as a "child" under Alaska's Wrongful Death Act); Webb v. Harvell, 563 F. Supp. 172, 174-75 (W.D. Ark. 1983) (holding that minor child adopted years before biological parent's death was not decedent's "child" under Arkansas wrongful death statute at the time of his death); Edonna v. Heckman, 253 P.2d 627, 628 (Ariz. Ct. App. 2011) (holding that minor lacked standing to bring wrongful death action to recover for death of biological father where minor had been adopted fifteen years prior); Phraner v. Cote Mart, Inc., 63 Cal.Rptr.2d 740, 742 (Cal. Ct. App. 1997) (holding that minor's adoption, at birth, prior to her biological parent's death severed minor's right to bring a claim as a "child" under California's wrongful death statute); Go Int'l Inc. v. Lewis, 601 S.W.2d 495, 499 (Tex. Civ. App. 1980) (natural children adopted fourteen years prior to their biological parents' deaths were not "children" under Texas' wrongful death statute).  These cases therefore do not speak to the issue at hand of whether a minor child who is adopted *after* his or her biological parent's death has standing to bring a wrongful death suit.

6

definition of "heir:" "As used in this section, 'heir' means a person who, under the laws of this State, would be entitled to succeed to the separate property of the decedent if the decedent had died intestate."  Nev. Rev. Stat. § 41.085(1).

It is undisputable that Plaintiff R.J. was Dr. Rich's heir at the time of his death and was entitled to succeed to Dr. Rich's property if he had died intestate.  Defendants ask us to rule, on a matter of first impression in Nevada, that Plaintiff's adoption divested her of her right to recover damages for the wrongful death of her natural parent.  We decline to do so.  We predict that the Nevada Supreme Court would hold that Plaintiff R.J.'s right to bring a wrongful death suit is akin to a property right, and that it vested in her at the time of Dr. Rich's death.  Consequently, her subsequent adoption did not deprive Plaintiff R.J. of her property right that had already accrued, just as Plaintiff R.J. is not now required to return to Dr. Rich's estate any property she inherited upon his death due to her subsequent adoption.  We agree with the Court in <u>Alberino v. Long Island Jewish-Hillside Medical Center</u>, which when faced with the same situation, held that

> where, as here, the decedent's infant child is adopted after the decedent's death, his vested property right in the benefits of a cause of action for his natural parent's wrongful death will not be affected by the termination of his rights of inheritance and succession from and through his natural parents upon the making of an order of adoption. . . . The termination of these rights at the time of the adoption cannot operate to deprive the infant of a property right already accrued and vested.

450 N.Y.S.2d 857, 857 (N.Y. App. Div. 1982).  Many other federal and state courts facing the same situation have also held that a child's

7

subsequent adoption does not terminate his or her right to bring a wrongful death suit. See, e.g., Sanchez v. City of Chubbuck, No. CV 08-551-REB, 2010 WL 742715, at *5 (D. Idaho Feb. 24, 2010) ("While the Court acknowledges that [Idaho's adoption statute] could possibly be read to endorse Defendants' position, it is more sensible in the Court's view with public policy and equity, and the Legislature's presumed intent gleaned from a review of the statutes in their entirety, that this action only forecloses an heir's wrongful death claim if that heir was adopted before the decedent died - a situation not present here."); Pillsbury v. Title Ins. & Trust Co., 166 P. 11, 14 (Cal. 1917) ("Unquestionably, since [the adoption] followed the death of their father, it did not affect their status as his heirs.  Whatever rights as heirs had descended to them upon the death of their ancestor they still retained."); Emory Univ. v. Dorsey, 429 S.E.2d 307, 308 (Ga. Ct. App. 1993) ("An adoption which occurs subsequent to the death of a natural parent should not terminate a cause of action for the wrongful death of the parent. . . . Consequently, we hold that to the extent that Jordan is otherwise entitled to recover under the wrongful death statute, his adoption after his mother's death does not bar that recovery."); Corley v. State, Dep't of Health & Hosps., 749 So.2d 926, 941-42 (La. Ct. App. 1999)(holding that decedent's child was entitled to recover for father's wrongful death even though he had been legally adopted by his mother's new husband at the time of trial because "a cause of action for the recovery of wrongful death damages vests in favor of the surviving spouse and child on the date of the death of

the spouse or parent.  The only relevant time for the determination of the relationship between potential claimants and the decedent is the date of death."); In re Estate of Mittendorf, 600 N.Y.2d 122, 122 (N.Y. App. Div. 1993) ("Where a decedent's infant child is adopted after the decedent's death, his or her vested property right in the benefits of a cause of action for a natural parent's wrongful death will not be affected by the termination of his or her rights of inheritance and succession from and through the natural parents upon the making of an order of adoption.") (citation omitted).  To hold otherwise would not foster the public policy of encouraging adoptions, and would force a minor child to choose between pursuing a wrongful death suit and being adopted by her step-parent.  Consequently, we hold that Plaintiff R.J. is entitled to bring suit and to and recover under Nevada's wrongful death statute.

## V. Conclusion

In a matter of first impression under Nevada law, we decline to hold that Plaintiff R.J.'s standing to bring a wrongful death suit with regard to her natural father terminated upon her adoption, after his death, by her step-father.  Plaintiff's right to bring a wrongful death suit vested at the time of her natural father's death.  We agree with a long line of courts that have held similarly.

1   **IT IS, THEREFORE, HEREBY ORDERED** that Defendant TASER's Motion
2 for Summary Judgment (#53) with regard to standing of Plaintiff
3 R.J., a minor, is **DENIED**.

7 DATED: September 26, 2012.

*Edward C. Reed.*
UNITED STATES DISTRICT JUDGE

10